

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00044-CR

_____

ERIC L. HILL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 43089-B

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Moseley

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

O P I N I O N

Eric L. Hill was convicted by a jury of continuous family violence, based on allegations that he had done violence to his girlfriend, Raven Thomas, on three occasions within twelve continuous months. The charge alleged that he had committed such violence once on February 22, 2013, and that there were two such acts of violence committed by him June 29, 2013 (one of these was alleged to have occurred at a club and another one on the same day in the apartment they shared). After the jury finding of guilt, Hill entered a "true" plea to two enhancement allegations and tried the issue of punishment to the jury. He was sentenced to serve twenty-seven years in prison.

Although Hill does not dispute that Thomas falls within the class of people designated as "family" pursuant to the statute under which he was charged, he contends on appeal (1) that there is insufficient evidence to sustain his conviction and (2) that the jury charge failed to require the jurors to return a unanimous verdict. To explain his position a bit more, although Hill admitted that he attacked Thomas at the club, he maintains that there is insufficient evidence that he did violence to her during either of the other two incidents that were alleged to have occurred.

In addition to Hill's claim that there was insufficient evidence for the jury to have found the existence of the other two alleged incidents, he argues that the trial court erred in its refusal to instruct the jury that in order to convict, it was necessary for the jury to agree on the existence of the same offenses.

A person commits the offense of continuous violence against the family, a third degree felony, if the person, within a twelve-month period, assaults a family member two or more times. TEX. PENAL CODE ANN. § 25.11 (West 2011). Its pertinent provisions state as follows:

> (a)     A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an [assault] under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.

> (b)     If the jury is the trier of fact, members of the jury are not required to agree unanimously on the specific conduct in which the defendant engaged that constituted an offense under Section 22.01(a)(1) against the person or persons described by Subsection (a) or the exact date when that conduct occurred. The jury must agree unanimously that the defendant, during a period that is 12 months or less in duration, two or more times engaged in conduct that constituted an offense under Section 22.01(a)(1) against the person or persons described by Subsection (a).

*Id.*

## I.     Claim of Insufficiency of the Evidence

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Hill committed the offense. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable

3

inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see Allen v. State*, 436 S.W.3d 815 (Tex. App.—Texarkana 2014, pet. ref'd).

Hill's indictment alleges that he committed an offense under Section 25.11 by committing three acts of violence—one in February 2013 and two others on the same day in June 2013—causing injury to a member of his "family"—Raven, his girlfriend.

Thomas told different versions at different times of her encounters with Hill. In each of the circumstances, she told people one story at or near the time of each incident, but radically changed her rendition of the facts at the time of trial.[1] The police officer who responded to the February complaint testified that Thomas had told him, and had told the dispatcher, that Hill assaulted her by throwing a rolling desk chair at her, that she broke her finger blocking it, and that Hill then jumped on her and punched and kicked her. The officer testified that Thomas had bruising on her back, shoulder, and ribs, and that her right middle finger was in a splint. At trial, although Thomas admitted that she had made those statements at the time, she said she had lied when she previously related that story. At trial, she said instead that her finger had been broken

---

[1]There is no indication that the State plans to pursue perjury charges against the alleged victim.

4

when she slammed it in a car door and that she had lied to the police and hospital staff about the injuries having been the result of Hill's assault because she was then angry at him. Her anger, she maintained, originated because Hill would not come home. At trial, she testified that she had warned him that she would call the police and tell them a story to get him in trouble if he did not return home.

Regarding the June incident, the testimony is more widely sourced. Antoinette Morgan, Thomas' friend, told police that at about the time the incident took place, she and Thomas were in Thomas' bedroom talking when Hill came in and struck both of them.[2] At the trial, Morgan's story of the incident changed. Under the newer version, Morgan testified that Hill had struck her, causing her to leave the bedroom; she maintained that after she departed, she did not know what later transpired. Thomas' father was also in the apartment. He testified that he telephoned 9-1-1 when he saw Hill enter and go upstairs to Thomas' bedroom; he said that he subsequently heard noises like "someone's getting beat up." The investigating officer testified that he saw Thomas as she came out of the apartment, that her face was "real red and puffy, swollen, still quite red," and that her apparent injuries were fresh. However, it is also apparent that she was beaten and injured only thirteen hours previously in the club incident.

All of this evidence (both the stories that were given at the time of the incidents and the changed stories provided by the women at the time of trial) was presented to the jury. In other words, there is evidence that could have been understood to support either the State's case or Hill's version of events. Sorting out and weighing the strength of the evidence is the jury's role

---

[2]As an aside, at the time this report was originally given, Morgan provided the police a false name, and she was, at the time of trial, incarcerated, charged with forgery.

in a trial, and there was evidence to support its decision. In the circumstances of this case, there was sufficient evidence for the jury to have found that Hill committed family violence during each of the three events mentioned in the charge. That being the case, there was sufficient evidence to support a finding by the jury that Hill committed continuous family violence.

## II.      Claim of Jury Charge Error

The next issue raised by Hill concerns the appropriateness of the jury charge. Before submission, Hill requested that an instruction be included informing the jury that it was required to come to a unanimous decision on two offenses, rather than some jurors finding the evidence sufficient as to one, and some sufficient as to the other. The trial court considered the matter overnight, but then refused the request. Hill argues that this was error of sufficient gravity to dictate reversal, because it is axiomatic that Texas law requires a unanimous verdict in a felony case. *See Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005).

Unanimity means that "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Id.* at 745. Jurors must unanimously agree on all elements of a crime in order to convict, but they need not agree on all underlying facts that compose a particular element. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006) (citing *State v. Johnson*, 627 N.W.2d 455, 459–60 (Wis. 2001)); *Ngo*, 175 S.W.3d at 747. Thus, as will be addressed below, courts have tended to lock in on the question of exactly what constitutes the elements of the statutory crime.

Understandably (because the statute under which Hill was charged is a relatively new law), no opinion of an appellate court in Texas is directly on point. As raised on appeal, the

6

question is whether the trial court erred by failing to properly submit the charge as requested, as a violation of Hill's Sixth Amendment rights. *See* U.S. CONST. amend. VI.

The pertinent part of the submitted charge reads as follows:

> To find the Defendant "guilty" of Continuous Violence Against the Family you must all agree that the State has proven elements 1, 2, and 3 listed above beyond a reasonable doubt, but you do not have to agree on which two Assaults listed in elements 2(a), 2(b) and 2(c) above.

As set out at trial and now on appeal, the question is whether it was proper to tell the jury that if each juror believed Hill assaulted Thomas twice (out of any number of possibilities) during a year, then it should convict, or, alternatively, if the Constitution requires the jurors to unanimously conclude that two particular assaults occurred before it can properly convict.

The State suggests that we should import the reasoning utilized in connection with the continuous sexual abuse statute,[3] which contains similar language to the continuous family violence statute applied in this case. In a case involving the continuous sexual abuse statute, the Austin Court of Appeals concluded that the right to a unanimous jury verdict was not violated when the jury was not required to unanimously agree on which of the various offenses had occurred so long as the jury was required to unanimously decide that the defendant had committed at least two of the alleged sexual acts. *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd), *cert. denied*, 133 S.Ct. 645 (2012).

In that case, the State alleged eleven different "acts" and, similar to this case, the charge simply required the jury to find, as a group, that Martin had committed two of the sex abuse acts. *Id.* The jury was not required to make findings showing that each juror concurred as to which of

---

[3]TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014).

7

the acts had been committed. Clearly, if we assume the jury in the *Martin* case followed its instructions, the jurors could have found an enormous number of combinations that did not involve any degree of unanimity. Although there is a lesser number of possibilities to add in the mix here, the argument raised in the *Martin* case basically raised the same kind of constitutional issues implicated by this appeal. Here, the State urges that we should adopt the reasoning in *Martin* to decide that the unanimity constitutionally required is not as to the specifically claimed wrongful acts, but is instead to a generic finding beyond a reasonable doubt that Hill had committed (at least) any two of the alleged actions.

In *Pollock v. State*, 405 S.W.3d 396, 405–06 (Tex. App.—Fort Worth 2013, no pet.), our sister court affirmed a conviction under the continuous sexual abuse law with only the briefest discussion of the issue of unanimity as to which of several incidents had occurred, concluding that the element of the offense was two prohibited acts. The Fort Worth Court held that all that was required for conviction was proof beyond a reasonable doubt that two such acts had occurred, but that it was not necessary to prove each act upon which the State relied. The San Antonio court in *Fulmer v. State*, 401 S.W.3d 305, 312–13 (Tex. App.—San Antonio 2012, pet. ref'd), *cert. denied*, 134 S.Ct. 436 (2013), provided a much more detailed examination of the issue. As did the Austin court in *Martin*, the San Antonio court concluded in *Fulmer* that the individual acts of sexual abuse were not the elements of the offense, but instead were only evidentiary facts of the charged offense, "'the manner and means by which the actus reus element is committed.'" *Id.* at 312 (quoting *Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex.

8

App.—Austin 2010, no pet.)); *see Casey v. State*, 349 S.W.3d 825, 829–30 (Tex. App.—El Paso 2011, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 857–58 (Tex. App.—Dallas 2010, pet. ref'd).

In a case analyzing the family violence statute which was the basis of the conviction in this case, one Texas appellate court does suggest some discomfort with this reasoning. *See Ex parte Morales*, 416 S.W.3d 546, 548–49 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). In that case, although the court worked its way through this logic in connection with the family violence statute, it then concluded (without agreeing that it was correct) that it did not need to reach that question because only two allegations were made, and a facial pretrial challenge to the constitutionality of the statute was thus not adequately shown.

Except for *Morales*, none of these cases analyze the statute at issue in this case, and the *Morales* case is easily distinguishable because the jury was presented with only two incidents of family violence. However, the reasoning utilized in those decisions is directly applicable to the continuous family violence statute. Although the relevant parts of the continuous sexual abuse statute and the continuous family violence statute are not precisely identical, they are sufficiently close to be compared. We adopt the reasoning in the continuous sexual abuse cases and apply it in continuous family violence cases. In the circumstances of construing the statute under examination here, it is sufficient to allow a jury to select from a menu of possible bad acts and agree that a defendant committed two of them without the concomitant requirement that the jurors be shown to all concur as to which of the acts did occur. In other words, we acquiesce in the analysis employed by our sister courts in their analysis of the perceived problem with the continuous sexual abuse statute; that is to say that the elements of the offense are not the

9

individual bad acts, but are the sufficiency of the evidence to prove the commission of any combination of any two of those acts during the requisite time period.

We have previously concluded that there was sufficient evidence to prove all three of the allegations.

Accordingly, we affirm the judgment of the trial court.



Bailey C. Moseley
Justice

Date Submitted:     December 29, 2014
Date Decided:       January 9, 2015

Publish